Burgettstown Area School District and Insurance Company of North America, Petitioners v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Magdelene Slone, Respondents.

Argued September 10, 1979, before Judges WILKINSON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Raymond F. Keisling*, with him *Will & Keisling*, for petitioners.

*Arnold Turner, Jr.* and *John Brunner*, for respondents.

OPINION BY JUDGE CRAIG, November 15, 1979:

This appeal, by the employer's insurance carrier from a decision of the Workmen's Compensation Appeal Board (board) affirming a referee's dismissal of a petition to terminate a notice of compensation payable, leaves us without evidence of a crucial fact. Accordingly, we must remand.

Before her injury, claimant was a physical education instructor. As a result of her work-related accident, she continues to suffer from the effects of

ruptured discs in the lumbar area of the spine and cervical area of the neck.

Because the insurer moved to terminate the present compensation agreement, it bore the burden before the compensation authorities of showing the termination or change of claimant's disability and the availability of work which claimant is capable of doing. *Workmen's Compensation Appeal Board v. Pennsylvania School Boards Association*, 28 Pa. Commonwealth Ct. 618, 369 A.2d 503 (1977).

Beyond dispute, the medical testimony established that claimant is at least partially disabled, operates under certain physical limitations, and is currently incapable of returning to the position of physical education instructor, a job which would require her to demonstrate sundry body movements to her students.[1]

The issue is whether or not claimant is capable of performing assignments as a *substitute* classroom teacher, given her present physical limitations. There is no dispute as to the availability of that kind of work.

Work at the blackboard is the crux of the problem in this case.

The referee made the following finding of fact, upon which, alone, rests the conclusion that claimant could not perform classroom teacher work:

4. Claimant could not perform the duties of a classroom teacher because she would have dif-

---

[1] The deposition of Dr. Kirwood Hunter was presented on behalf of the claimant. The claimant herself did not testify.

Dr. Hunter testified that claimant was totally disabled for her original occupation, gym instructor, and that she retains a "functional disability in the low/moderate range of 25 to 40% to the body as a whole." He also testified that her prognosis for recovery, without the intervention of surgery, was poor.

ficulty working at the blackboard because this would require hyperextension of the neck and this would produce intolerable discomfort in her neck. There would also be restrictions in regard to her low back.[2]

*If* claimant were required to use a blackboard, part of her physician's testimony would amply support that finding of fact; he said that she would have "difficulty" working at a blackboard.[3]

However, nothing in the record before the referee supports his assumption that use of a blackboard is an essential or substantial part of the duties of a substitute. The above opinion of claimant's doctor is the only reference to blackboards in the record.

In reviewing this finding of fact, the board adopted the same assumption:

No doubt, the referee reasoned that even as a classroom teacher, claimant would be required to use the blackboard, and the medical testimony indicates pain in such use would prevent her from using the blackboard, *which, it is*

---

[2] Because of lower back problems, claimant must rest periodically and also cannot sit for an entire class period. Employer's insurer's witness, a high school principal, presented uncontradicted and unequivocal testimony that claimant could observe these limitations as a substitute teacher.

[3] In response to a question as to whether claimant would be capable of performing classroom teacher duties, the physician said:

She would be somewhat compromised, but we do have to recognize that as a classroom teacher, she has control over mobility. She doesn't have to sit, she can get up and move around to alleviate the various pains and relieve the various aches and pains she might have. *She would have some difficulty working at the blackboard, because this would require hyperextension of the neck, and this is one of the maneuvers we use to test for nerve root compression and this would produce intolerant [sic] discomfort in the neck, doing that maneuver.* There would also be restrictions in regard to her lower back. (Emphasis added.)

*known, is a fundamental function of a class-room teacher.* (Emphasis added.)

Although it may seem to be a matter of common sense that classroom teachers would be required to use a blackboard, the problem in this case is that the work the employer proved to be available to claimant was that of a *substitute* classroom teacher.[4]

The testimony as to the duties of a substitute teacher, presented by a high school principal, strongly indicate that, in fact, a substitute teacher's primary function is simply to keep order in the classroom.[5] Thus, because the record shows the duties of a substitute teacher to be different in some measure,

---

[4] The high school principal testified that secondary schools experience chronic difficulty in obtaining substitute teachers on a day-to-day basis. Substitutes receive a minimum of $33.00 per day compensation. He also testified that substitute teachers are not automatically disqualified if they are unable to report on any given day, and that they are allowed, indeed encouraged, to move about the classroom, and are entitled to various free periods during any given day, including a contract-guaranteed thirty-minute uninterrupted lunch period.

[5] Mr. Keisling, the principal, testified on this issue, on cross-examination, as follows:

Q. It is true, is it not, that when you engage the services of a substitute teacher, those people whom you call as substitutes are expected, if not required, to do the same type of work that the regular employees normally do?

A. We'd like them to really supervise the students in class, Mr. Brunner. It's very difficult for them to carry on the instruction in class. We hope that that would occur when possible.

Q. If nothing else, though, it would be their responsibility to, at worst, keep decorum in the classroom and order and so forth?

A. Yes, sir; that's true.

Q. So, therefore, they would be required to be alert and able to move around in the classroom during that period? They would be expected to do that?

A. To be a professional in the classroom, yes.

we are not prepared to conclude that the assumption that claimant would be required to use a blackboard is an inference that could reasonably be made without a specific finding based on the record. The referee's crucial finding as to use of the blackboard is simply not supported by competent evidence in the record.

In this case, under *Forbes Pavilion Nursing Home Inc. v. Workmen's Compensation Appeal Board*, 18 Pa. Commonwealth Ct. 352, 336 A.2d 440 (1975), a remand by the board would have been proper, even under the narrower limitations on the board's power to remand under the 1972 amendments to Section 423 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§853, 854.

Hence, we must remand this case to the board for a specific finding, based on competent evidence, on the issue of whether or not claimant, as a substitute teacher, would be required to use a blackboard.

If the evidence supports a finding that claimant would not be required to use a blackboard, a recomputation of benefits based on a partial disability would appear to be appropriate.[6] *See Yellow Cab Co. v. Workmen's Compensation Appeal Board*, 37 Pa. Commonwealth Ct. 337, 390 A.2d 880 (1978).

---

[6] With the blackboard question aside, the weight of the evidence strongly supports a finding that claimant is capable of performing the duties of a substitute teacher. Her own physician stated:

Q. Do you feel that she could go back to work as a high school teacher, if she were restricted only to classroom duties, . . . the approximate six hours a day that they [classroom teachers] would be required to be in the classroom, with frequent breaks, free periods and, of course, the opportunity to change her position frequently?

A. As I have already stated, I believe that she could accomplish this if consideration was [sic] given to restrictions and to the opportunity to get off her feet occasionally.

332

### ORDER

AND Now, this 15th day of November, 1979, the order of the Workmen's Compensation Appeal Board, dated June 1, 1978, at Docket No. A-74550 is vacated, and the case remanded to the Workmen's Compensation Appeal Board for disposition consistent with this opinion.